**STATE of Missouri, Respondent,**

v.

**Anthony Curtis STARK, Appellant.**

No. 11202.

Missouri Court of Appeals,
Southern District, En Banc.

Nov. 27, 1979.

several distinguishing cuts and marks to the G70 × 14 Goodyear tires mounted on Keystone "mag" wheels which adorned the vehicle. To keep the "mags" from rattling, shop towels had been inserted inside the hubs. Although no record had been made of the serial numbers of the tires and no identifying marks had been inscribed upon the wheels, Miles vowed that as a result of repairing the Mustang and in subsequently fixing several "flats" thereon, he had become sufficiently acquainted with the tires and wheels to identify them.

Ms. Jackson testified that near 5 a. m. January 4, 1978, defendant appeared at her trailer home wanting water for the radiator of his Plymouth station wagon so he could continue the task of transporting his brother-in-law to work. She said defendant, after procuring water, departed near 5:30 a. m. and returned in about 45 minutes. Thereafter defendant appeared to be working on his vehicle until her father and Miles appeared at the service station.

Miles recounted that when he and Ms. Jackson's father arrived at the filling station close to 7:30 a. m. January 4, they were hailed by defendant who shortly departed the premises in his station wagon on which were then mounted no "mag" wheels or G70 × 14 Goodyear tires. About 20 minutes after defendant drove away from the station, Miles, so he testified, discovered his stepdaughter's Mustang had been shorn of the two rear mag wheels and tires and that the car's rear end was supported off the ground by the aid of a 5-gallon can inserted beneath the rear axle.

Subsequent to Miles reporting the theft and after a deputy sheriff made inquiry concerning the matter, a pickup order was issued for defendant. At approximately 3:20 a. m. January 5, 1978, defendant was arrested by the Kennett police while driving his Plymouth station wagon. Mounted on the rear of the vehicle were two G70 × 14 Goodyear tires on "mag" wheels.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Blair Buckley, Jr., Public Defender, Caruthersville, for appellant.

TITUS, Judge.

Charged with tampering with a motor vehicle (§§ 560.175–1 and 560.180)[1] and as a habitual criminal (§ 556.280), defendant was jury-convicted and court-sentenced to the custody of the Department of Corrections for a term of five years.

Daryle Miles (Miles) operated a service station and a liquor store situate between Hayti and Kennett. A mobile home, occupied by Margaret Jackson (Ms. Jackson) and her children, was located near the station and store. In the summer of 1977, Miles bought a wrecked Ford Mustang which he repaired and gave to his stepdaughter after her 16th birthday on August 11, 1977. According to Miles, the wreck had produced

---

1. References to statutes and rules are to RSMo 1969, V.A.M.S., and to Missouri Supreme Court Rules, V.A.M.R.

At trial Miles and his stepdaughter identified two exhibits as being the "mag" wheels and G70 × 14 tires which had been taken from the Mustang. The stepdaughter identified a rag in one of the wheels as material that had been placed in it to prevent rattling. The deputy identified the exhibits as the wheels and tires found on defendant's station wagon on the day after the wheels and tires had been reportedly stolen.

To the contrary, defendant testified the tire and wheel exhibits were purchased by him from a man in Illinois for the sum of $40 and that he was the person that had put the rag in the wheel to prevent it from rattling. Defendant's sister and brother-in-law said that defendant's station wagon was equipped with the tire and wheel exhibits on December 22, 1977, when he started staying with them. A friend of defendant testified that defendant's station wagon had "mag" wheels mounted on its rear a couple of days after Christmas 1977.

On this appeal defendant's first point relied on reads: "The trial court erred in overruling Defendant's Motions for Judgment of Acquittal at the Close of All the Evidence and Motion for New Trial, because accepting as true all the State's evidence, whether circumstantial or direct, together with all favorable inferences drawn therefrom, the evidence is insufficient as a matter of law to support a finding of guilty."

As written, this point violates the mandatory requirements of Rule 84.04(d) because there is no attempt to demonstrate "wherein and why" the evidence was insufficient as a matter of law to support a finding of guilty. However, if the evidence was, in fact, insufficient to sustain the conviction, then plain error affecting a substantial right is involved from which manifest injustice must have resulted. Rule 27.-20(c). Therefore, we will briefly consider the point. State v. Webb, 544 S.W.2d 53, 54[2] (Mo.App.1976).

As already noted, albeit no record had been made of the serial numbers of the tires and no identifying marks had been made on the "mag" wheels, Miles and his stepdaughter made positive identification of them at trial as being the objects stolen from the Mustang. Nevertheless, even if the testimony be diluted to mere assertions that the tires and wheels looked like or looked similar to the stolen items, this would have been sufficient to warrant their admission into evidence as exhibits. State v. Kern, 447 S.W.2d 571, 575[3, 4] (Mo.1969); State v. Johnson, 286 S.W.2d 787, 791[3, 4] (Mo.1956); State v. Shipman, 568 S.W.2d 947, 953–954[13, 14] (Mo.App.1978); State v. Duncan, 540 S.W.2d 130, 137[19] (Mo.App. 1976); State v. Gonzales, 533 S.W.2d 268, 274[13] (Mo.App.1976); State v. Alderman, 498 S.W.2d 69, 72 (Mo.App.1973). Identification of stolen objects at trial need not be entirely unqualified, as the weight to be given to identity is for the jury. State v. Stancliff, 467 S.W.2d 26, 30[2] (Mo.1971); State v. Holman, 556 S.W.2d 499, 504[4] (Mo.App.1977). Moreover, as the jury had leave to believe or disbelieve all, part or none of the testimony of any witness [State v. Haslip, 583 S.W.2d 225, 227[4] (Mo.App. 1979); State v. Davis, 556 S.W.2d 745, 747[2] (Mo.App.1977)], it had the right to believe the testimony adduced by the state and reject that proffered by the defense. Having thus winnowed the conflicting trial testimony, the jury came by sufficient evidence as a matter of law to support the guilty verdict.

Defendant's second and final point relied on reads: "The trial court erred in sustaining the prosecution's objection to Defendant's question of prosecution witness Deputy Sheriff Hopkins as to whether he had taken any fingerprints during his investigation of the crime because it was prejudicial to Defendant's right to expose to the trier of fact all the relevant and material facts of the case and prejudiced the Defendant by precluding defense argument as to all aspects of the weakness of the State's case."

Without resorting to the transcript on appeal, we are unable to fully comprehend this point. At trial defense counsel asked

the deputy sheriff if he had attempted "to take any fingerprints from any of these wheels." The state's objection to the question was sustained by the trial court and properly so. It has repeatedly been said that the state has no duty to take fingerprints from stolen articles nor to produce such prints into evidence. Neither is the state required to account for the absence of such prints. *State v. Terry,* 472 S.W.2d 426, 430[8] (Mo. banc 1971); *State v. Holmes,* 389 S.W.2d 30, 34[4] (Mo.1965), aff'd 428 S.W.2d 571 (Mo.1968); *State v. Lankford,* 565 S.W.2d 737, 740 (Mo.App.1978); *State v. Estes,* 562 S.W.2d 142, 145 (Mo.App.1978); *State v. Rutherford,* 554 S.W.2d 584, 586 (Mo.App.1977); *State v. Woodson,* 522 S.W.2d 651, 652 (Mo.App.1975).

Judgment affirmed.

All concur.