STATE of Missouri, Respondent,

v.

Stanley W. RYUN, Appellant.

No. 28672.

Missouri Court of Appeals,
Kansas City District.

Feb. 28, 1977.

Motion for Rehearing and/or Transfer
Denied April 15, 1977.

Application to Transfer Denied
May 10, 1977.

James D. Boggs, Witt & Shafer, Platte City, for appellant.

John C. Danforth, Atty. Gen., J. Michael Davis, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW J. HIGGINS, Special Judge.

Appeal from conviction by a jury of burglary, second degree, of a dwelling house, and stealing. §§ 560.045, 560.156, 560.110, RSMo 1969. Appellant charges errors going to the sufficiency of evidence and the prosecuting attorney's opening statement, the verdict-directing instruction, and in permitting an exhibit to go to the jury room. His contentions present, as a question of first impression, whether the victims' mobile home is a dwelling house within the meaning of Section 560.045, supra. Affirmed.

Euel Leonard Nix and his wife, Eleanor, reside in a house trailer or mobile home, situated on a farm in Platte County, Missouri, owned by Dr. Robert W. Butcher. They had been in such residence for three years under an arrangement with Doctor Butcher in which Doctor Butcher furnished the dwelling place and Mr. and Mrs. Nix looked after cattle and machinery on the farm. Mr. and Mrs. Nix and Doctor Butcher had keys to the trailer house; Mrs. and Mrs. Nix owned the personal property within the dwelling.

On the morning of December 4, 1975, Mr. Nix left home to go to work in Kansas City, Kansas, leaving Mrs. Nix at home. He received a call at 4:30 p.m., advising that his home had been broken and entered. When he arrived home, police officers and his wife were present. He noticed a glass broken in the front door, and his belongings were "pretty well messed up." His television set, a Philco 27″ console, was sitting in an unusual place. It was not connected to the electrical circuit and the lead wire to the rooftop antenna had been torn apart. Further check revealed the loss of a pair of binoculars. He was unacquainted with anyone named Holsted or Ryun and had given no one permission to enter his home and take his property.

Mr. Nix identified a photograph, Defendant's Exhibit D, as depicting, among other things, the trailer house or mobile home in which he and Mrs. Nix resided. It is a typical mobile home, detached from the tow vehicle by which it may be moved. It has a "skirt" from the floor level to the ground to block air passage under the floor, and is connected to an electricity transmission line.

Mrs. Nix described her home as a living room, containing divan, television, two end tables, three lamps, coffee table, and desk; kitchen, containing refrigerator, stove, sewing machine, table, and chairs; their own bedroom; and a second bedroom which they did not use. There was a door at each end of her home.

On December 4, 1975, she left home around 1:00 or 1:30. Doctor Butcher and his assistant, Miss Herman, were at the barn. She locked her home when she left; her television set was in place, connected to the electricity; the front door glass was intact except for a crack in the corner.

Mrs. Nix returned home after 3:00 or 3:30 p.m. Glass from the front door was on the floor, the television set had been moved, and her home had been ransacked. She also missed the binoculars on the day following the burglary. She also was unacquainted with Stanley Ryun, and had not given him or anyone else permission to enter her home.

Robert W. Butcher, M.D., resides in Clay County, Missouri, practices medicine in

Kansas City, and is the owner of a farm in Platte County. Mr. and Mrs. Leonard Nix reside on the farm in a house trailer which he purchased and had delivered and parked on his farm in October, 1972. Mr. and Mrs. Nix owned the personal property in the trailer home, and he and Mr. and Mrs. Nix had keys to the home.

Around noon on December 4, 1975, Doctor Butcher and his technician, Jeanne Herman, arrived at the farm. While around one of the barns, he observed a youngster in a blue coat run from the house trailer and jump into a bronze Chevrolet Nova. In his own automobile, he followed the Nova, noticed that the trunk was open, and that a "wide T.V.," the Nixes' T.V., was "upside down in the trunk." He continued to follow the Nova out of the farm and onto the road and succeeded in stopping the Nova. He attempted to persuade the vehicle and its occupants to accompany him to a cafe operated by Deputy Sheriff Troy McClanahan and his wife, and did persuade them to return to the farm. Upon arrival at the farm, defendant Stanley W. Ryun and an adult companion, Floyd Holsted, removed the T.V. from the car, disappeared around the corner, and carried the T.V. into the trailer house. Defendant attempted to persuade Doctor Butcher to let them go because the incident was a mistake. He kept the occupants of the Nova under surveillance at gunpoint and called the deputy sheriff. Officers ultimately arrived and arrested defendant, Holsted, and Holsted's juvenile son.

The officers described the arrest, the location of the television set in the Nix home, and the general disarray of the home.

Appellant contends (I) that the court erred in failing to enter a judgment of acquittal "in that the evidence of the state * * * established that the purported unlawful entry was into a trailer and not a dwelling house and, accordingly, it was impossible as a matter of law for the defendant * * * to be found guilty of burglary not in the first degree [burglary, second degree] of a dwelling house." He argues that because the structure in evidence was a "trailer," breaking and entering such structure would be tampering with a motor vehicle of a type subject to licensing under Section 301.010(29), RSMo Supp.1975, in violation of Section 560.175, RSMo 1969, rather than burglary, second degree, of a dwelling house.

■ Elements of the statutory offense of burglary, second degree, are breaking and entering a dwelling house with intent to commit a felony or steal therein. *State v. Brunson*, 516 S.W.2d 799, 801[1] (Mo.App. 1974).

■ "At common law and under statutes declaratory thereof * * * a dwelling house * * * may be generally defined as any kind of structure used as a place of habitation and occupied by persons other than defendant." 12 C.J.S. Burglary § 17, p. 678. The terms commonly used to indicate the place subject to burglary, second degree, are dwelling or dwelling house. The word "dwelling" imports a human habitation and, as a matter of common law, burglary, second degree, "is strictly an offense against the habitation." Perkins on Criminal Law (Second Edition), p. 200. "The breaking and entering, to constitute a burglary, must be ordinarily into the dwelling-house of another; that is to say, a house in which the occupier and his family usually reside, or, in other words, dwell and lie in." Wharton's Criminal Law, Ninth Edition, Vol. 1, § 781. See also *State v. Huffman*, 136 Mo. 58, 37 S.W. 797 (1896); and see *State v. Auger*, 434 S.W.2d 1, 5 (Mo.1968), to effect that a place regularly used as one's abode is his dwelling house for purposes of burglary.

In Missouri, "the term 'dwelling house' is not defined by the [burglary] statutes. At common law it included any place with some degree of permanency in which one or more persons resided * * *. Whether * * * one room of a building [or a building itself] regularly occupied by a person constitutes a dwelling house under those burglary statutes which use the term in the common law meaning depends upon the use to which the room [or building] is put. * * * applying this test it has been uniformly

held that one room of a larger building [or the building itself], when in fact used as the place of abode or living quarters of an individual, may constitute a dwelling house." *State v. Jones*, 365 S.W.2d 508, 512 (Mo.1963).

The structure in question, a typical mobile home building, was placed on the farm by Doctor Butcher in October, 1972. It was detached from its tow and has not been since moved. Mr. and Mrs. Nix made it their sole place of abode and living quarters for three years. The building has front and back doors, equipped with locks, and consists of furnished living room, kitchen, bath, bedroom, and a spare bedroom. In addition to a television set, other electrical appliances are in the home operating off an electricity transmission line. The building is "skirted" from floor to ground to block air circulation and drafts. It is the place of habitation of Mr. and Mrs. Nix and they have occupied it with the intent to exclude defendant.

Under the authorities, the foregoing facts and circumstances demonstrate that the mobile home in evidence was the "dwelling house" of Mr. and Mrs. Nix within the meaning of Section 560.045, supra. See also *Luce v. State*, 128 Tex.Cr.R. 287, 81 S.W.2d 93 (1935), where a cabin constructed on an automobile chassis was a "private residence" within statute denouncing burglary of a private residence at night; and *State v. Ebel*, 92 Mont. 413, 15 P.2d 233 (1932), where a movable sheep wagon occupied by a sheep herder as his dwelling house constituted a "house" and "building" within the burglary statute.

Whether a trailer must be licensed for use on the public highways and whether interfering with a trailer in some manner may be tampering with a motor vehicle are not relevant to the present inquiry.

Appellant contends (II) that the court erred in failing to enter a judgment of acquittal "as to the prosecution for stealing and burglary" in that "the evidence only established that defendant * * * was present at the scene * * * and may have assisted in the return of property but failed to establish that the defendant * * * participated in the purported crime." See, e. g., *State v. Eye*, 492 S.W.2d 166 (Mo.App. 1973); *State v. Irby*, 423 S.W.2d 800 (Mo. 1968), where the evidence, circumstantial and otherwise, showed only that defendant was in close proximity to another or others who may have committed an offense.

The evidence against defendant in the offenses against the dwelling house and property of Mr. and Mrs. Nix is sufficient to show his participation as opposed to "mere presence" at the scene.

Defendant was a passenger in the automobile observed departing the crime scene at the Nix home. The automobile was small, and a color television console identified as the property of Mr. and Mrs. Nix protruded from the trunk of the automobile. When apprehended at some distance from the crime scene, the occupants returned and defendant and Holsted carried the television set into the trailer. He attempted to persuade Doctor Butcher to treat the matter as a mistake or misunderstanding because no harm had been done. Defendant had no permission to enter the Nix home or to take their property. Entry to the home had been gained by breaking a glass in the front door of the home, and the interior was in disarray. For a similar case, see *State v. Cobb*, 444 S.W.2d 408 (Mo. banc 1969), where the bulk and nature of the stolen property bore on the manner in which it was possessed by defendant jointly with others. Note also that possession of property stolen in a burglary is evidence connecting defendant with the burglary and in the absence of countervailing evidence is sufficient to sustain a burglary conviction, *State v. Lewis*, 482 S.W.2d 432 (Mo.1972); and that unexplained possession of stolen property, together with evidence of burglary, is sufficient to support a conviction of burglary and stealing, *State v. Grey*, 525 S.W.2d 367 (Mo.App.1975).

Appellant charges the court erred (III) in giving Instruction No. 8 "which recited that the defendant could be found guilty of burglary of a dwelling house * *

if they found that the defendant broke and entered into a dwelling place \* \* \* for the reason that the applicable penal statute does not proscribe \* \* \* breaking and entering into a dwelling place but rather the breaking and entering of a dwelling house and \* \* \* defendant was thereby deprived of a defense in that the jury was never required to find and believe \* \* \* that the trailer purportedly broken into was a dwelling house \* \* \*."

It has been demonstrated that defendant did break and enter the "dwelling house" of Mr. and Mrs. Nix within the meaning of the burglary statutes. Appellant concedes that Instruction No. 8 is in the form of MAI–CR 7.22. Although using the term "dwelling place" instead of the statutory term "dwelling house," MAI–CR 7.22 is required for submission of burglary, second degree, of a dwelling house under § 560.045, supra. Rule 20.02(c), V.A.M.R. "Dwelling place" is the equivalent of "dwelling house." *State v. Auger, supra.*

Appellant charges the court erred (IV) in overruling his motion for dismissal "for the reason that the State failed in its opening statement to state those facts to be offered as proof which, if believed, would establish a *prima facie* case \* \* \*." He asserts there was no statement that consent had not been given to defendant or anyone else as to the taking of any property, or to indicate that a "dwelling house" was broken and entered.

■ A prosecuting attorney is required by Section 546.070 RSMo 1969, to state the case. The purpose of the requirement is to advise the jury of the facts which the state intends to prove and so inform the defendant as to enable him to meet the accusation. *State v. Masters,* 530 S.W.2d 28, 30 (Mo. App.1975). It is not, however, a test of the sufficiency or competency of evidence. *State v. Fleming,* 523 S.W.2d 849, 852 (Mo. App.1975); its scope and extent lies in the discretion of the trial court, *State v. Fenton,* 499 S.W.2d 813, 816 (Mo.App.1973), and the court does not err in refusing to dismiss upon opening statement where the prosecuting attorney makes "no admissions

or statements from which it necessarily followed that the state's proof would be insufficient to sustain the charge." *State v. McAllister,* 468 S.W.2d 27, 29 (Mo.1971).

■ Appellant does not contend that the prosecuting attorney admitted the State out of court. With respect to the matter of consent, the record shows the prosecutor said, "We will then call Mr. and Mrs. Nix, who will testify that at no time on the 4th day of December, 1975, did they ever give permission or consent to Stanley Ryun or anyone else to enter \* \* \* on the farm property [or] \* \* \* in their trailer house." With respect to the matter of burglary of a dwelling house, the prosecuting attorney stated the "responsibility of the State \* \* \* to prove beyond a reasonable doubt that in fact on December the 4th, 1975, \* \* \* Stanley Ryun did forcibly break and enter \* \* \* into a dwelling house, a trailer house occupied by Mr. and Mrs. E. Nix, and he then and there took property, a colored television set and a pair of binoculars."

Appellant charges the court erred (V) in permitting the television set, State's Exhibit 11, to be taken to the jury room during deliberation "for the reason that the jury was thereby allowed to consider facts not in evidence through experimentation during the deliberation \* \* \*."

As the jury was retiring, one juror asked if it was permissible for the jury to examine the television set. After the jury retired, the court determined that the television set, which was on rollers, could be delivered to the jury room.

■ Appellant concedes that the jury may have exhibits in a case in the jury room during deliberation in the discretion of the trial court. *State v. Arrington,* 375 S.W.2d 186 (Mo.1964); *State v. Jordan,* 532 S.W.2d 776 (Mo.App.1975). He argues that the court abused such discretion because the request "implied that the juror intended to experiment" with the exhibit "and thereby direct to the jury's attention facts not in evidence \* \* \*."

The television set was in evidence and before the jury during the trial, and the alleged vice in permitting it to go to the jury room rests on speculation of some improper experiment. Such assertion does not indicate the court's discretion was an untenable act or so against reason that it worked an injustice. *State v. Connell*, 523 S.W.2d 132, 138 (Mo.App.1975).

Judgment affirmed.

All concur.